[Cite as *Antonious v. Selvaggio*, 2022-Ohio-4056.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

NASHAAT ANTONIOUS, et al.,

      Plaintiffs,

  - vs -

BRANDON SELVAGGIO, et al.,

      Defendant-Appellant,

  - vs -

TAX EASE OHIO, LLC,
US BANK AS CUSTODIAN, et al.,

      Defendant-Appellee.

**CASE NO. 2022-L-047**

Civil Appeal from the
Court of Common Pleas

Trial Court No. 2016 CF 001567

# O P I N I O N

Decided: November 14, 2022
Judgment: Affirmed

*Richard D. Eisenberg*, P.O. Box 43083, Richmond Heights, OH 44143 (For Defendant-Appellant).

*Daniel A. Friedlander*, Weltman, Weinberg & Reis Co., LPA, 965 Keynote Circle, Cleveland, OH 44131 (For Defendant-Appellee).

MARY JANE TRAPP, J.

{¶1} Appellant, Brandon Selvaggio ("Mr. Selvaggio"), appeals the judgment of the Lake County Court of Common Pleas granting summary judgment to appellee, Tax Ease Ohio, LLC, US Bank as Custodian ("Tax Ease"), on its cross-claim for the foreclosure of tax liens.

{¶2} Mr. Selvaggio asserts one assignment of error, contending that the trial court erred by granting Tax Ease's motion for summary judgment because there were genuine issues of material fact. Specifically, Mr. Selvaggio contends that the tax certificates upon which Tax Ease sought to foreclose are void because the county treasurer failed to send him written notice of their sale pursuant to R.C. 5721.33(K).

{¶3} After a careful review of the record and pertinent law, we find that Mr. Selvaggio's assignment of error lacks merit. The county treasurer's compliance with R.C. 5721.33(K) was not an issue of "material fact" precluding summary judgment in favor of Tax Ease. Even if the county treasurer failed to comply with R.C. 5721.33(K), such noncompliance would not create a legal basis upon which to invalidate the tax certificates.

{¶4} Thus, we affirm the judgment of the Lake County Court of Common Pleas.

### Substantive and Procedural History

{¶5} The underlying matter arose in 2016 when the plaintiffs, Nashaat Antonious and JERMC Management Corp., filed a complaint against Mr. Selvaggio and others in the Lake County Court of Common Pleas seeking to foreclose on a judgment lien encumbering three parcels of real property in Mentor, Ohio ("the Mentor properties").

{¶6} Tax Ease was a named defendant as the holder of recorded tax certificates on the Mentor properties. Tax Ease also held two recorded tax certificates in relation to Mr. Selvaggio's real property at 10640 Bayshire Trail, Willoughby, Ohio ("the Bayshire property"). Tax Ease purchased the tax certificates from the Lake County Treasurer in 2015 (certificate nos. 15-204 and 15-431). During the pendency of the plaintiffs' foreclosure action, Tax Ease purchased two additional tax certificates from the county treasurer in relation to the Bayshire property (certificate nos. 16-276 and 17-173).

{¶7} In 2018, with leave of court, Tax Ease filed cross-claims to foreclose on its tax certificates encumbering the Mentor properties and the Bayshire property. Following the litigation of issues not relevant to this appeal, Tax Ease voluntarily dismissed its cross-claim involving the Mentor properties. In 2022, with leave of court, Tax Ease filed a motion for summary judgment in relation to the Bayshire property.

{¶8} Mr. Selvaggio filed a brief in opposition, contending, in relevant part, that the county treasurer failed to comply with R.C. 5721.33(K), which required it to send written notice of the tax certificate sales to Tax Ease, rendering the tax certificates void and unenforceable. In support, he attached an affidavit averring that he resided at the Bayshire property at all relevant times; that he never received notice that the certificates had been sold; and that the case file at the clerk of court's office does not contain a signed return receipt card.

{¶9} The trial court filed a judgment entry and decree of foreclosure granting Tax Ease's motion for summary judgment. The trial court determined that Tax Ease was entitled to the foreclosure of its lien interests and was permitted to file a praecipe for an order of sale.

{¶10} Mr. Selvaggio appealed and presents the following assignment of error:

{¶11} "The Trial Court committed prejudicial error in granting Crossclaim Appellee, Tax Ease Ohio, LLC's Renewed Motion for Summary Judgment, when there remained material issues of fact to be tried."

## Standard of Review

{¶12} We review a trial court's order granting summary judgment de novo. *Sabo v. Zimmerman*, 11th Dist. Ashtabula No. 2012-A-0005, 2012-Ohio-4763, ¶ 9. "A de novo review requires the appellate court to conduct an independent review of the evidence

3

before the trial court without deference to the trial court's decision." *Peer v. Sayers*, 11th Dist. Trumbull No. 2011-T-0014, 2011-Ohio-5439, ¶ 27.

{¶13} Summary judgment is proper when (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence, viewing that evidence most strongly in favor of the nonmoving party, that reasonable minds can come to but one conclusion, which is adverse to the nonmoving party. Civ.R. 56(C). The initial burden is on the moving party to demonstrate that no issue of material fact exists and that the moving party is entitled to judgment as a matter of law. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996). If the movant meets this burden, the burden shifts to the nonmoving party to establish that a genuine issue of material fact exists for trial. *Id.* at 293.

{¶14} However, not every factual dispute precludes summary judgment. *Oliveri v. OsteoStrong*, 2021-Ohio-1694, 171 N.E.3d 386, ¶ 15 (11th Dist.). Rather, "'[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Turner v. Turner*, 67 Ohio St.3d 337, 340, 617 N.E.2d 1123 (1993), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

**Law and Analysis**

{¶15} In his sole assignment of error, Mr. Selvaggio contends that the trial court erred in granting summary judgment to Tax Ease because there were genuine issues of material fact for trial. Specifically, he argues that the tax certificates encumbering the Bayshire property are "void ab initio" because the county treasurer did not send him written notice of their sale pursuant to R.C. 5721.33(K).

4

{¶16} "'Ohio's tax certificate legislation, R.C. 5721.30 through 5721.43, allows a county government to sell tax certificates to private investors. A tax certificate entitles the certificate holder to the first lien on the real property. A property owner can redeem the certificate and remove the lien by paying the certificate holder the purchase price plus interest, penalties, and costs. If the property owner fails to redeem the certificates, the tax certificate holder may initiate foreclosure proceedings on the real property after complying with certain statutory requirements.'" (Citations omitted.) *PNC Bank Natl. Assn. v. Graham*, 11th Dist. Lake No. 2021-L-076, 2022-Ohio-888, ¶ 6, quoting *Woods Cove II, L.L.C. v. Am. Guaranteed Mgt. Co., L.L.C.*, 8th Dist. Cuyahoga No. 103652, 2016-Ohio-3177, ¶ 2.

{¶17} To demonstrate its entitlement to summary judgment, Tax Ease was required to submit evidence to show (1) the purchase of the tax liens, (2) the amounts due, (3) the statutory notice of intent to foreclose, and (4) documents indicating that Mr. Selvaggio is the owner of the Bayshire property. *See Tax Ease Ohio, LLC v. Blankenship*, 2d Dist. Montgomery No. 27168, 2017-Ohio-2786, ¶ 13.

{¶18} This case implicates the first element, i.e., Tax Ease's purchase of the tax liens. The record establishes that Tax Ease purchased the tax certificates pursuant to R.C. 5721.33, which provides that "[a] county treasurer may, in the treasurer's discretion, negotiate the sale or transfer of any number of tax certificates with one or more persons, including a county land reutilization corporation." R.C. 5721.33(A). The statutory sale process is as follows:

{¶19} First, "[t]he county treasurer shall adopt rules governing the eligibility of persons to purchase tax certificates or to otherwise participate in a negotiated sale under this section." R.C. 5721.33(E)(1).

5

{¶20} Second, "[a]ny person that intends to purchase a tax certificate in a negotiated sale shall submit an affidavit to the county treasurer that establishes compliance with the applicable eligibility criteria and includes any other information required by the treasurer." R.C. 5721.33(E)(2).

{¶21} Third, "[t]he purchaser in a negotiated sale under this section shall deliver the certificate purchase price or other consideration, plus any applicable premium and less any applicable discount and including any noncash consideration, to the county treasurer not later than the close of business on the date the tax certificates are delivered to the purchaser." R.C. 5721.33(F). "The purchaser also shall pay on the date the tax certificates are delivered to the purchaser the fee, if any, negotiated under division (J) of this section." *Id.*

{¶22} Fourth, "[u]pon receipt of the full payment from the purchaser of the certificate purchase price or other agreed-upon consideration, plus any applicable premium and less any applicable discount, and the negotiated fee, if any, the county treasurer * * * shall issue the tax certificate and record the tax certificate sale by entering into a tax certificate register the certificate purchase price, any premium paid or discount taken, the certificate rate of interest, the date the certificates were sold, the name and address of the certificate holder or, in the case of issuance of the tax certificates in a book-entry system, the name and address of the nominee, and any other information the county treasurer considers necessary." R.C. 5721.33(G). "The county treasurer also shall transfer the tax certificates to the certificate holder." *Id.* "Upon issuing the tax certificates, the delinquent taxes that make up the certificate purchase price are transferred, and the superior lien of the state and its taxing districts for those delinquent taxes is conveyed intact to the certificate holder or holders." *Id.*

6

Case No. 2022-L-047

{¶23} "Upon the sale and delivery of a tax certificate, the tax certificate vests in the certificate holder the first lien previously held by the state and its taxing districts under section 5721.10 of the Revised Code for the amount of taxes, assessments, interest, and penalty charged against a certificate parcel, superior to all other liens and encumbrances upon the parcel described in the tax certificate, in the amount of the certificate redemption price, except liens for delinquent taxes that attached to the certificate parcel prior to the attachment of the lien being conveyed by the sale of such tax certificate." R.C. 5721.35(A). In addition, "[t]he tax certificate purchased by the certificate holder is presumptive evidence in all courts and boards of revision and in all proceedings, including, without limitation, at the trial of the foreclosure action, of the amount and validity of the taxes, assessments, charges, penalties by the court and added to such principal amount, and interest appearing due and unpaid and of their nonpayment." R.C. 5721.37(F).

{¶24} Mr. Selvaggio's argument is based on R.C. 5721.33(K), which, at the time Tax Ease purchased the tax certificates, provided as follows:

{¶25} "*After selling tax certificates under this section*, the county treasurer shall send written notice by certified mail to the last known tax-mailing address of the owner of the certificate parcel. The notice shall inform the owner that a tax certificate with respect to such owner's parcel was sold or transferred and shall describe the owner's options to redeem the parcel, including entering into a redemption payment plan under division (C)(2) of section 5721.38 of the Revised Code. However, the county treasurer is not required to send a notice under this division if the treasurer previously has attempted to

7

send a notice to the owner of the parcel at the owner's last known tax-mailing address and the postal service has returned the notice as undeliverable." (Emphasis added.)[1]

{¶26} The parties dispute whether the county treasurer complied with R.C. 5721.33(K), although neither party issued discovery to the county treasurer. Tax Ease argues there is a presumption that a public official has discharged his or her official duties in accordance with law. Mr. Selvaggio argues that he raised an issue of material fact in his affidavit, where he averred that he never received written notice of the tax certificate sales.

{¶27} Based on our de novo review, we find that the county treasurer's compliance with R.C. 5721.33(K) was not an issue of "material fact" precluding summary judgment in favor of Tax Ease. Even if the county treasurer failed to comply with R.C. 5721.33(K), there is no legal basis upon which to invalidate the tax certificates.

{¶28} As an initial matter, there is no language in R.C. 5721.33(K) or elsewhere that supports Mr. Selvaggio's position. He also cites no case law in which a court has invalidated a tax lien on this or any similar basis.

{¶29} In addition, the statutory text expressly contradicts Mr. Selvaggio's assertion that the county treasurer's compliance with R.C. 5721.33(K) is a "condition precedent" to a valid tax certificate sale. The Supreme Court of Ohio has defined a "condition precedent" as "one that is to be performed before the agreement becomes effective, and which calls for the happening of some event or the performance of some

---

1. Effective November 2, 2018, the first sentence of R.C. 5721.33(K) was amended to state, "After selling tax certificates under this section, the county treasurer shall send written notice **to the owner of the certificate parcel** by **either** certified mail **or, if the treasurer has record of an internet identifier of record associated with the owner, by ordinary mail and by that internet identifier of record. A mailed notice shall be sent** to the **owner's** last known tax-mailing address ~~of the owner of the certificate parcel~~." (Bolding and redlining added.) The 2018 amendments do not affect the issues on appeal.

Case No. 2022-L-047

act after the terms of the contract have been agreed on, before the contract shall be binding on the parties." *Mumaw v. W. & S. Life Ins. Co.*, 97 Ohio St. 1, 119 N.E. 132 (1917), syllabus; *see Wroblesky v. Hughley*, 2021-Ohio-1063, 169 N.E.3d 709, ¶ 45 (11th Dist.), *appeal not accepted*, 164 Ohio St.3d 1421, 2021-Ohio-2923, 172 N.E.3d 1049. As indicated, a tax certificate becomes effective upon "sale and delivery." R.C. 5721.35(A). The county treasurer's written notice obligation under R.C. 5721.33(K) expressly arises "*[a]fter* selling tax certificates." (Emphasis added.)

{¶30} We further disagree with Mr. Selvaggio's suggestion that the alleged lack of written notice precluded him from exercising his right to redeem the Bayshire property pursuant to R.C. 5721.38(C)(2). That provision provides, "During the period *beginning on the date a tax certificate is sold* under section 5721.33 of the Revised Code and *ending on the date the decree is rendered on the foreclosure proceeding* under division (F) of section 5721.37 of the Revised Code, the owner of record of the certificate parcel, or any other person entitled to redeem that parcel, may enter into a redemption payment plan with the certificate holder and all secured parties of the certificate holder." (Emphasis added.)

{¶31} A property owner's redemption rights under R.C. 5721.38(C)(2) are not dependent on the issuance of written notice under R.C. 5721.33(K). Rather, the notice simply *describes* the property owner's existing redemption rights. *See id.* ("The notice * * * shall describe the owner's options to redeem the parcel, including entering into a redemption payment plan under division (C)(2) of section 5721.38 of the Revised Code"). Despite the fact that Tax Ease filed its cross-claims in 2018, there is no indication in the record that Mr. Selvaggio attempted to exercise his redemption rights at any time during the protracted litigation. *See Aurora Bank F.S.B. v. Gordon*, 8th Dist. Cuyahoga No.

9

103138, 2016-Ohio-938, ¶ 26 ("[Appellant]'s protracted litigation and failure to make any offer of payment belie her claim that timely notice of the purchaser's deposit would have prompted her to exercise her right to redemption"). Further, we note that Mr. Selvaggio is entitled to redeem the Bayshire property at any time before the confirmation of a sale. *See* R.C. 5721.38(B).

{¶32} On appeal, Mr. Selvaggio contends that the county treasurer's alleged failure to comply with R.C. 5721.33(K) violated his constitutional right to due process. Since Mr. Selvaggio did not raise this due process claim in the trial court, it is waived. *Atlantic Mtge. & Invest. Corp. v. Sayers*, 11th Dist. Ashtabula No. 2000-A-0081, 2002 WL 331734, *3 (Mar. 1, 2002). In any event, a party must demonstrate prejudice resulting from an alleged due process violation. *See State v. Nagle*, 11th Dist. Lake No. 99-L-089, 2000 WL 777835, *6 (June 16, 2000). Mr. Selvaggio has not alleged, much less demonstrated, the existence of prejudice. And, as explained above, his redemption rights were not prejudiced.

{¶33} In sum, the county treasurer's compliance with R.C. 5721.33(K) was not an issue of "material fact" precluding summary judgment in favor of Tax Ease. Accordingly, the trial court did not err in granting summary judgment to Tax Ease.

{¶34} Mr. Selvaggio's sole assignment of error is without merit.

{¶35} For the foregoing reasons, the judgment of the Lake County Court of Common Pleas is affirmed.


MATT LYNCH, J.,

JOHN J. EKLUND, J.,

concur.

10

Case No. 2022-L-047